**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MILLENNIUM PIPELINE COMPANY, L.L.C.,**

**Plaintiff,**

vs.                                                                          **1:17-CV-1197**
                                                                                  **(MAD/CFH)**

**BASIL SEGGOS,** *in his official capacity as*
*Commissioner of the New York State Department*
*of Environmental Conservation***, NEW YORK**
**STATE DEPARTMENT OF ENVIRONMENTAL**
**CONSERVATION,**

**Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

GREENBERG TRAURIG, LLP                    **ROBERT M. ROSENTHAL, ESQ.**
54 State Street
6th Floor
Albany, New York 12207
Attorneys for Plaintiff

HOGAN, LOVELLS LAW FIRM                 **CATHERINE E. STETSON, ESQ.**
555 Thirteenth Street, N.W.                       **SEAN M. MAROTTA, ESQ.**
Columbia Square                                        **SUSAN M. COOK, ESQ.**
Washington, DC 20004-1109
Attorneys for Plaintiff

NEW YORK STATE ATTORNEY GENERAL    **BRIAN M. LUSIGNAN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On October 27, 2017, Plaintiff Millennium Pipeline Company, LLC ("Millennium"), filed

the complaint in this action seeking declaratory and injunctive relief against Defendants New

York State Department of Environmental Conservation ("NYSDEC") and Basil Seggos, the Commissioner of the NYSDEC. *See* Dkt. No. 1. This case arises out of a dispute between Millennium and the NYSDEC over state and federal permitting and certification related to the construction of a natural gas pipeline in Orange County, New York. *See id.* at ¶ 29. On November 15, 2017, Millennium filed a motion for a preliminary injunction. *See* Dkt. No. 18. Defendants opposed Millennium's motion and filed a cross-motion to dismiss. *See* Dkt. No. 24. For the following reasons, Millennium's motion is granted and Defendants' motion is denied.

## II. BACKGROUND

### A.    Statutory Background

The Natural Gas Act ("NGA") of 1938 "provides comprehensive federal regulation for the transportation or sale of natural gas in interstate commerce." *Island E. Pipeline Co., LLC v. McCarthy*, 482 F.3d 79, 84 (2d Cir. 2006). The NGA provides the Federal Energy Regulatory Commission ("FERC") with the authority to regulate natural gas companies. *See id.* Any natural gas company that seeks to engage in the construction, extension, or acquisition of facilities to transport or sell natural gas in interstate commerce must apply to the FERC for a Certificate of Public Convenience and Necessity. *See* 15 U.S.C. § 717f(c)(1)(A). "The FERC is required to issue such a certificate if it finds the company 'is able and willing' to comply with the federal regulatory scheme and the proposed project 'is or will be required by the present or future public convenience and necessity . . . .'" *Island E. Pipeline*, 482 F.3d at 84 (quoting 15 U.S.C. § 717f(e)). The FERC may, however, attach "to the issuance of the certificate . . . such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f(e).

The NGA generally preempts state permitting and licensing requirements, *see Island E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 143 (2d Cir. 2008), but the statute expressly carves out the rights of states in administering three federal regulatory statutes, one of which is the Clean Water Act ("CWA"), *see* 15 U.S.C. § 717b(d)(3).  Under Section 401 of the CWA ("Section 401"), any applicant seeking a federal permit for an activity that "may result in any discharge into the navigable waters" must obtain "a certification from the State in which the discharge originates or will originate . . . that any such discharge will comply with the applicable provisions" of the CWA.  33 U.S.C. § 1341(a)(1).  No applicable federal license or permit will be granted unless the certification required by Section 401 has been obtained, or the reviewing body waives the requirement by failing to act on an application for certification within one year.  *See id.*; *see also Keating v. FERC*, 927 F.2d 616, 622 (D.C. Cir. 1991) ("Through [the Section 401 certification] requirement, Congress intended that the states would retain the power to block, for environmental reasons, local water projects that might otherwise win federal approval").

In reviewing applications for Section 401 certification, states may apply their own EPA-approved state water quality standards.  The CWA "preserves the states' authority to determine issues of a planned project's effect on water quality" by allowing "states to develop their own water quality standards and submit them to the EPA for approval."  *Constitution Pipeline Co., LLC v. N.Y. State Dep't of Envtl. Conservation*, 868 F.3d 87, 100-01 (2d Cir. 2017).  In New York, NYSDEC may "conduct its own review of [a pipeline's] likely effects on New York waterbodies and whether those effects would comply with the State's water quality standards."  *Id.* at 101.  Based on that review, NYSDEC may decide whether to grant or deny an application for certification under Section 401 of the CWA.  *See id.*

**B.**     **Factual Background**

3

Millennium is a natural gas transportation company that owns and operates an interstate natural gas pipeline system extending across southern New York.  *See* Dkt. No. 1 at ¶ 9.  Several years ago, Millennium was contracted to build a 7.8-mile pipeline (the "Pipeline Project") connecting its interstate system with an electric power generation facility (the "Valley Energy Center") that is currently under construction in Orange County, New York.  *See id.* at ¶¶ 28-29.  The Valley Energy Center, which is being built by CPV Valley, LLC ("CPV"), is expected to generate enough electricity to power more than 650,000 homes, while reducing New York electricity costs by more than $400 million per year and reducing greenhouse gas emissions by nearly a half-million tons per year.  *See id.* at ¶¶ 28-29.

In November 2015, Millennium submitted an application to the FERC for a Certificate of Public Convenience and Necessity, which was required in order to begin construction of the Pipeline Project.  *See* Dkt. No. 18-3.  Later that month, Millennium submitted a Joint Application to NYSDEC for certification under Section 401 of the CWA, as well as two permits under New York State Environmental Conservation Law ("ECL"): a stream disturbance permit and a freshwater wetlands permit.  *See* Dkt. No. 18-4.  In December 2015 and June 2016, NYSDEC sent notices to Millennium requesting additional information related to its Joint Application.  *See* Dkt. No. 1 at ¶¶ 34, 38.  In November 2016, the FERC provisionally granted Millennium's application for a Certificate of Public Convenience and Necessity so long as certain conditions were met, including approval of the Section 401 certification by NYSDEC.  *See* Dkt. No. 18-7 at 56.  The FERC conditions did not require that Millennium receive stream disturbance or freshwater wetlands permits from NYSDEC.  *See id.* at 53-58.

After receiving FERC's provisional approval for the Pipeline Project, Millennium wrote to NYSDEC requesting a decision on its Joint Application.  *See* Dkt. No. 1 at ¶ 43.  According to

Millennium, NYSDEC had one year to make a decision on the Joint Application from the time it was first submitted in November 2015. *See id.* at ¶ 44. But NYSDEC argued that it had one year from the date that Millennium's Joint Application was fully submitted—according to NYSDEC, it was not fully submitted until August 2016, when Millennium responded to NYSDEC's final request for additional information. *See* Dkt. No. 24-1 at 8. Millennium disagreed and petitioned the Court of Appeals for the D.C. Circuit seeking a declaration either requiring NYSDEC to render a decision or stating that NYSDEC had waived its right to make a decision. *See id.* at ¶ 44. The D.C. Circuit dismissed the petition, stating that Millennium should first have sought a declaration from the FERC, and that any adverse FERC decision could then be appealed to the D.C. Circuit. *See Millennium Pipeline Co., L.L.C. v. Seggos*, 860 F.3d 696, 701 (D.C. Cir. 2017). In July 2017, Millennium followed the D.C. Circuit's suggestion and asked the FERC to declare that the NYSDEC had waived its section 401 authority because it failed to render a decision on Millennium's Joint Application within one year. *See* Dkt. No. 1 at ¶ 45.

In August 2017, the NYSDEC denied Millennium's Joint Application for the Section 401 certificate, as well as the stream disturbance and freshwater wetlands permits. *See* Dkt. No. 18-10. NYSDEC also sent the FERC a motion to reopen the review of Millennium's application for a Certificate of Public Convenience and Necessity. *See* Dkt. No. 19-9. FERC did not reopen the application; instead, on September 17, 2017, FERC issued an order declaring NYSDEC waived its authority to deny Millennium's Section 401 certification by failing to render a decision within one year. *See* Dkt. No. 1 at ¶ 45. In response, NYSDEC petitioned the Second Circuit for a writ of prohibition, arguing that it did not waive its Section 401 authority. *See In re N.Y. State Dep't of Envtl. Conservation*, No. 17-3503 (2d Cir.). Meanwhile, Millennium petitioned the Second Circuit to review NYSDEC's denial of the Section 401 certification. *See Millennium Pipeline*

*Co., L.L.C. v. N.Y. State Dep't of Envtl. Conserv.*, No. 17-3465 (2d Cir.).  Both of those petitions

are currently pending before the Second Circuit.

On October 27, 2017, the FERC issued a Notice to Proceed with Construction, which

authorized Millennium to begin construction on the Pipeline Project without a Section 401

certificate from NYSDEC.  *See* Dkt. No. 18-17.  After FERC refused to stay the Notice to

Proceed, NYSDEC petitioned the Second Circuit for an emergency stay.  *See In re N.Y. State

Dep't of Envtl. Conservation*, No. 17-3503 (2d Cir.).  On November 2, 2017, the Second Circuit

granted an administrative stay pending consideration of the petition.  *See id.*, Dkt. No. 35 (2d Cir.

Nov. 2, 2017).  On December 7, 2017, after expedited briefing and oral argument, the Second

Circuit denied NYSDEC's request for an emergency stay and dissolved the administrative stay

preventing Millennium from beginning construction of the Pipeline Project.  *See id.*, Dkt. No. 95

(2d Cir. Dec. 7, 2017).  Which brings us to the proceedings before this Court.

On October 27, 2017, Millennium filed the complaint in this action, which seeks to

prevent NYSDEC from enforcing state law in an attempt to prevent the construction of the

Pipeline Project.  Essentially, Millennium brought this case in the Northern District to ensure that

there would be no additional obstacle to construction of the Pipeline Project if and when the

Second Circuit lifted the stay.  In particular, Millennium seeks an injunction from the Court

preventing NYSDEC from using the stream disturbance and freshwater wetlands permits

—which, along with the Section 401 certification, were a part of the Joint Application that was

denied by NYSDEC—to prevent Millennium from proceeding with construction.  According to

Millennium, it is critical that construction proceeds immediately.  A certain portion of

construction and tree clearing must be complete by December 31, 2017, in order to avoid

jeopardizing a bald eagles nest.  *See* Dkt. No. 18-1 at 10.  If construction is not completed by

December 31, 2017, Millennium may have to delay construction until November 2018, which would prevent Millennium from delivering gas to the Valley Energy Center until late 2018 or early 2019. *See id.* Additional tree clearing must be completed by March 31, 2018. *See* Dkt. No. 18-21 at ¶ 3.

On November 15, 2017, Millennium filed a motion for a preliminary injunction. *See* Dkt. No. 18. Millennium seeks a preliminary injunction "enjoining the Defendants from enforcing any state permitting requirements in a manner that would delay or interfere with construction or operation of the Valley Lateral Project Pipeline approved by the Federal Energy Regulatory Commission." *See id.* Defendants oppose the motion and filed a cross-motion to dismiss. Defendants argue that the complaint should be dismissed for lack of subject matter jurisdiction. Alternatively, Defendants argue that even if Millennium has standing, it has failed to meet the heightened standard necessary to establish the need for a preliminary injunction in this case.

### III. LEGAL STANDARD

#### A.    Subject Matter Jurisdiction

When a party moves to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted). Both parties are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to

the party asserting it.'" *Gunst v. Seaga*, No. 05-CV-2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Empls. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

**B.    Motion for a Preliminary Injunction**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  "A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Stagg P.C. v. U.S. Dep't of State*, 673 Fed. Appx. 93, 95 (2d Cir. 2016).

## IV. DISCUSSION

**A.    Subject Matter Jurisdiction**

Defendants make two separate arguments for why the Court lacks subject matter jurisdiction in this case.  First, Defendants assert that Millennium's claims fall within the exclusive jurisdiction of the Second Circuit.  *See* Dkt. No. 24-1 at 12-14.  Second, Defendants argue that Millennium has failed to establish that it will sustain an injury in fact sufficient to confer standing to sue.  *See id.* at 14-17.

### *1. Exclusive Jurisdiction*

Under the Natural Gas Act, "[t]he United States Court of Appeals for the circuit in which a facility . . . is proposed to be constructed, expanded, or operated shall have original and

8

exclusive jurisdiction over any civil action for the review of an order of a Federal agency . . . or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval . . . required under Federal law . . . ."  15 U.S.C. § 717r(d)(1). Furthermore, "[e]xclusive means exclusive, and the Natural Gas Act nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or in federal district court."  *Am. Energy Corp. v. Rockies Exp. Pipeline LLC*, 622 F3d 602, 605 (6th Cir. 2010).  The question is whether Millennium is seeking review of a "State administrative agency acting pursuant to Federal law" in this case.  The Court finds that it is not.

The Second Circuit has exclusive jurisdiction to review NYSDEC's rejection of Millennium's application for Section 401 certification because it was an action "pursuant to federal law"—collateral review of that action is not available in this Court.  But this case does not challenge NYSDEC's denial of the Section 401 certification; Millennium has filed a separate petition in the Second Circuit challenging that denial.  *See Millennium Pipeline Co., L.L.C. v. N.Y. State Dep't of Envtl. Conservation*, No. 17-3465 (2d Cir.).  Here, Millennium challenges NYSDEC's authority to independently stop construction of the Pipeline Project through denial of state permits, particularly the stream disturbance and freshwater wetlands permits.

Defendants argue that the state permits are "associated" with the Section 401 certification and thus fall under the Second Circuit's exclusive jurisdiction.  *See* Dkt. No. 24-1 at 13. However, denials of the state permits are not "actions pursuant to federal law" that would trigger the Second Circuit's exclusive jurisdiction under the NGA.  With a few clear exceptions,[1] the

---

[1] The NGA, at 15 U.S.C. § 717b(d), states these exceptions clearly:
> Except as specifically provided in this chapter, nothing in this chapter affects the rights of States under–
>> (1) the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 *et seq.*);

NGA generally preempts state laws. *See Constitution Pipeline Co.*, 868 F.3d at 100. One of these exceptions is a state's authority under the CWA to deny Section 401 certification because of a potential project's failure to comply with that state's environmental laws. *See* 33 U.S.C. § 1341(a)(1) ("No license or permit shall be granted if [Section 401] certification has been denied by the State . . . ."). States may deny Section 401 certification based on state environmental standards that have been approved by the EPA. *See Constitution Pipeline Co.*, 868 F.3d at 100-01. Therefore, Section 401 certification provides a mechanism for states to enforce their environmental standards when evaluating potential natural gas pipelines, but states are preempted from independently enforcing those standards through the denial of state permits. Therefore, NYSDEC's rejection of the Section 401 certification was "an action pursuant to federal law"; its rejection of the stream disturbance and freshwater wetlands permits was not.

Defendants also argue that even if its review of the stream disturbance and freshwater wetlands permits would not normally be an action pursuant to federal law, it was transformed into an action pursuant to federal law by instructions from the FERC. *See* Dkt. No. 24-1 at 13-14. When FERC issued its environmental assessment of the Pipeline Project, it concluded that the project "would not constitute a major federal action significantly affecting the quality of the human environment." Dkt. No. 18-6 at 125. According to NYSDEC, that conclusion was contingent on Millennium complying with applicable state permits. *See* Dkt. No. 24-1 at 6. Thus, Defendants argue, the denial of those permits was transformed into an action pursuant to federal law. But while Defendants cite to examples of state permits being referenced in the FERC's environmental assessment, Defendants do not cite any portion of the environmental

---

(2) the Clean Air Act (42 U.S.C. 7401 *et seq.*); or
(3) the Federal Water Pollution Control Act (33 U.S.C. 1251 *et seq.*).

assessment stating that Millennium would be required to obtain state permits.  *See id.*

Additionally, the FERC's provisional Certificate of Public Convenience and Necessity—the

approval that is required before construction may begin—does not state that Millennium would be

required to obtain state permits.  In an appendix, the FERC noted that its approval was contingent

on Millennium meeting a series of environmental conditions.  *See* Dkt. No. 18-7 at 53.  It is

clearly stated that Millennium would be required to show "that it has received all authorizations

required under federal law," but the state permits do not appear in the list of environmental

conditions.  *See id.* at 56.

Because the denial of the stream disturbance and freshwater wetlands permits was not an

action pursuant to federal law, this case does not fall within the exclusive jurisdiction of the

Second Circuit.  Millennium's claims in this case fall instead within this Court's jurisdiction.

Indeed, claims that state laws are preemped by the NGA are frequently brought in federal district

courts.  *See, e.g.*, *Islander E. Pipeline Co., LLC v. Blumenthal*, 478 F. Supp. 2d 289, 295 (D.

Conn. 2007); *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586, 600 (D. Md. 2007).

### *2. Millennium's Injury*

Unless a plaintiff has Article III standing, a court lacks subject matter jurisdiction to hear

their claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish Article

III standing, a plaintiff bears the burden of establishing three "irreducible constitutional

minimum" elements.  *See id.*  "The plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

In this case, only one of the three standing elements is in question: whether Millennium

has suffered an injury in fact.  To establish an "injury in fact," a plaintiff must show that he or she

suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  To be "particularized," an injury must affect the plaintiff "in a personal and individual way," and to be "concrete" an injury "must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548.  As for the "actual or imminent" requirement, a plaintiff must allege a non-speculative injury. *See Lujan*, 504 U.S. at 583-84.  An allegation of future injury may establish standing only "if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013)).

Here, Defendants argue that Millennium fails to establish an injury in fact because the injury it asserts is merely speculative. *See* Dkt. No. 24-1 at 14.  Although NYSDEC denied the state permits, Defendants argue that Millennium has not suffered an injury in fact because NYSDEC has not yet determined whether the state permits stand as an independent impediment to construction of the Pipeline Project. *See id.* at 15.

In support of their position, Defendants point to *Constitution Pipeline Co., LLC, v. N.Y. State Department of Environmental Conservation*, No. 16-CV-568 (N.D.N.Y. Mar. 16, 2017), which deals with facts very similar to the present matter.  In *Constitution Pipeline*, the plaintiff was a pipeline company seeking to build a 100-mile natural gas pipeline in New York State. *See id.* at 1.  As in this case, the plaintiff in *Constitution Pipeline* submitted a joint application to NYSDEC for Section 401 certification and state freshwater wetlands and stream disturbance permits. *See id.* at 6.  After the plaintiff received a Certificate of Public Convenience and Necessity from the FERC, NYSDEC issued a letter denying Section 401 certification but did not

render a decision on the state permits, which they left pending. *See id.* at 8. The plaintiff filed a petition in the Second Circuit challenging the denial of the Section 401 certification, and filed a complaint in the Northern District seeking a declaratory judgment that it was not required to obtain the state permits from NYSDEC. *See id.* at 8-9. The defendants moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the plaintiff had not suffered an injury in fact. *See id.* at 13.

In a well-reasoned decision, Judge Mordue granted the motion to dismiss for lack of standing. *See id.* at 15. The court found that there was no injury in fact because the NYSDEC had already denied the Section 401 certification and that denial prevented the plaintiff from moving forward with construction, regardless of the status of the state permits. *See id.* at 14. Moreover, the permits had not yet been denied. *See id.* Therefore, the court found that the plaintiff's "complaint [did] not allege an actual or imminent injury, but rather a 'purely hypothetical case in which the projected harm may ultimately fail to occur.'" *See id.* at 14 (quoting *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003)). Judge Mordue did note that, under different circumstances, standing could exist: "If, as a result of NYSDEC's denial, refusal to act, or delay in acting on the [state] permit applications, Constitution is denied permission to begin construction . . . Constitution would almost certainly have standing to seek appropriate relief." *See id.*

There are critical differences between *Constitution Pipeline* and this case. First, unlike the plaintiff in *Constitution Pipeline*, the denial of Millennium's Section 401 certification was overturned by FERC. Now that the Second Circuit has dissolved the administrative stay and denied NYSDEC's motion for an emergency stay, the denied state permits are the only impediment to construction of the Pipeline Project. Second, the state permits were actually

denied in this case, whereas in *Constitution Pipeline* they were still pending.  New York State Environmental Conservation Law is clear that the denial of stream disturbance or freshwater wetlands permits acts as a bar to construction.  *See* N.Y.E.C.L. § 15-0501 ("Except as provided [herein], no person or public corporation shall change, modify or disturb the course, channel or bed of any stream . . . without a permit issued pursuant to subdivision 3 of this section"); *id.* § 24-0701 ("After issuance of the official freshwater wetlands map of the state . . . any person desiring to conduct on freshwater wetlands as so designated thereon any of the regulated activities set forth in subdivision two of this section must obtain a permit as provided in this title").  Therefore, NYSDEC's denial of those permits means that Millennium is barred from beginning construction of the Pipeline Project under state law.

NYSDEC argues that Millennium's injury is still speculative because NYSDEC has not yet taken a position on whether it will enforce the denial of the state law permits and prohibit construction of the Pipeline Project.  Under the Declaratory Judgment Act, there is an "actual controversy" ripe for review where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972).  In the context of a pre-enforcement challenge to the constitutionality of a statute, "a justiciable controversy does not exist where compliance with (challenged) statutes is uncoerced by the risk of their enforcement.'"  *Id.* (quoting *Poe v. Ullman*, 367 U.S. 497, 508 (1961)).  In other words, courts must look to whether a plaintiff's "decision to challenge the obligations and prohibitions contained" in a statute is "truly motivated by a well-founded fear that refusal to comply would lead to prosecution."  *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 288 (6th Cir. 1997).

14

Where a plaintiff reasonably fears immediate hardship imposed by a statute, a challenge is ripe for judicial review. *See id.* "That the statute has not been enforced and that there is no certainty that it will be does not establish the lack of a case or controversy." *KVUE, Inc. v. Moore*, 709 F.2d 922, 930 (5th Cir. 1983). "'Where the enforcement of a regulatory statute would cause plaintiff to sustain a direct injury, the action may be properly maintained, whether or not the public officer has "threatened" suit; the presence of the statute is threat enough,' at least where the challenged statute is not moribund." *United Food & Commercial Workers Int'l Union AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 428 (8th Cir. 1988) (quoting 6A Moore's Federal Practice, ¶ 57.18[2] at 57-189 (2d ed. 1987)); *see also Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 985-86 (8th Cir. 2009) ("Where a plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute, courts have found standing to challenge the statute, even absent a specific threat of enforcement").

Here, the Court finds that there is an actual controversy that is ripe for review because Millennium has a well-founded fear that NYSDEC will enforce the denial of the stream disturbance or freshwater wetlands permits. This is not an instance of potentially moribund laws that are merely on the books and only hypothetically might be enforced against Millennium; NYSDEC has already denied the permits, appearing to signal that it is enforcing those laws. Further, in the letter denying the Joint Application for the state permits and Section 401 certification, NYSDEC explicitly instructed Millennium that NYSDEC was prohibiting construction. *See* Dkt. No. 18-10 at 2. It is not clear from the text of the letter whether NYSDEC intended for the ban on construction to remain in place if the Section 401 certification was granted or waived but the state permits were denied. *See id.* However, Millennium's fear of

enforcement is well-founded, and the permit denials impose an immediate hardship on Millennium.

While the Court finds that Millennium has standing with respect to the stream disturbance and freshwater wetlands permits, the relief that Millennium seeks in its complaint and motion for a preliminary injunction is much broader.  In the complaint, Millennium asks for "[p]reliminary and permanent injunctive relief enjoining Defendants from enforcing any state permitting requirements in a manner that would delay or interfere with construction or operation of the [Pipeline Project]."  *See* Dkt. No. 1 at ¶ 69.  Similarly, in the proposed preliminary injunction, Millennium seeks to enjoin "Defendants from enforcing any state permitting requirements in a manner that would delay or interfere with construction or operation of the [Pipeline Project]." *See* Dkt. No. 18 at 1.

Millennium's proposed language is too broad.  Millennium does not have standing with respect to "any state permitting requirement" that would interfere with construction of the Pipeline Project; Millennium has standing only with respect to the permits that were denied. Therefore, Plaintiff may only proceed in challenging the specific permits that were denied in this case: the stream disturbance and freshwater wetlands permits**.**

**B.     Preliminary Injunction**

***1. Irreparable Harm***

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  "To satisfy the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one

16

that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). "In order for harm to irreparable, money damages must be unavailable or at least inadequate." *Stagliano v. Herkimer Central Sch. Dist.*, 151 F. Supp. 3d 264, 273 (N.D.N.Y. 2015).

Millennium asserts that it will suffer irreparable harm in the absence of a preliminary injunction because the window for construction of the Pipeline Project is rapidly closing due to a variety of environmental issues. *See* Dkt. No. 18-1 at 21. First, there is a bald eagle nest that was discovered in the vicinity of the Pipeline Project, and Millennium must complete all construction activities within 660 feet of the nest by December 31, 2017, due to United States Fish and Wildlife Service ("USFWS") restrictions relating to bald eagle nesting season. *See* Dkt. No. 18-21 at ¶ 4. Millennium estimates that the work in that area will take approximately three weeks to complete. *See id.* at ¶ 5. Second, if Millennium is unable to complete the work before December 31, 2017, it may be subject to tree-clearing restrictions related to certain bat species and migratory birds, which restrict tree clearing between April 1 and October 31. *See id.* at ¶ 7. If Millennium is not permitted to immediately begin construction, the portion of construction within the bald eagle nest buffer could be delayed until November 2018. *See id.* Such a delay might prevent Millennium from providing natural gas to the Valley Energy Center until early 2019. *See id.* at ¶ 8.

A delay of that length would have significant consequences for Millennium and for CPV, the owner of the Valley Energy Center. For CPV, the delay would be particularly costly; CPV estimates that the total cost of a construction delay until November 2018 would be over $78 million. *See* Dkt. No. 18-22 at ¶ 22. Moreover, if the Valley Energy Center cannot receive and

operate on natural gas by August 15, 2018, CPV will be in default and may be subject to

bankruptcy filings. *See id.* at ¶ 23. As for Millennium, if the work near the bald eagle nest is not

complete by December 31, 2017, Millennium will have to apply for an "incidental take" permit

from USFWS to allow construction during bald eagle breeding season, which is January 1

through October 31. *See* Dkt. No. 18-21 at ¶ 7. The permitting process—which may take up to

six months and is not guaranteed to yield a permit—and the resulting delay in construction will

impose a financial burden on Millennium. *See* Dkt. No. 25 at 14.[2] Such a delay will also put the

future of the entire project at risk, including the Pipeline Project. *See* Dkt. No. 18-1 at 21.

Additionally, Millennium faces significant reputational harm and potential loss of future business

if its failure to build the Pipeline Project costs CPV over $78 million and pushes CPV into

default.

      First, Defendants argue that Millennium's showing of irreparable harm should be held to a

heightened standard because of the nature of the injunction. *See* Dkt. No. 24-1 at 17-18. The

Second Circuit has found a heightened standard appropriate where: "(i) an injunction is

'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought

and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *N.Y. ex*

*rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). Under the heightened

standard, a movant must make a "strong showing" of irreparable harm. *See id.* The injunctive

relief that Millennium seeks is not mandatory. *See Belile v. Doe No. 1*, No. 10-CV-6501, 2012

WL 3562032, *1 (W.D.N.Y. Aug. 16, 2012) ("A mandatory injunction . . . is said to alter the

---

[2] "In order for harm to be irreparable, money damages must be unavailable or at least inadequate." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 273 (N.D.N.Y. 2015). In this case, monetary harm may be considered irreparable because Millennium is barred by the Eleventh Amendment from recovering money damages. *See Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 423 (2d Cir. 2013); *accord United States v. State of N.Y.*, 708 F.2d 92, 93 (2d Cir. 1983).

status quo by commanding some positive act").  A preliminary injunction would, however, provide Millennium with substantially all of the relief it seeks in this case and it is possible that the relief likely could not be undone—construction is scheduled to last six months, which may be less time than it would take to reach a decision on the merits in this case.  *See* Dkt. No. 24-2 at ¶ 27.  Therefore, the Court will hold Millennium to the heightened standard.

Second, Defendants argue that because CPV is not a party to this case, the Court should not consider any injury to CPV at the irreparable harm stage of the preliminary injunction analysis.  *See* Dkt. No. 24-1 at 20.  As Defendants point out, "in the usual case, a pure injury to third parties should be reserved for the public-interest prong of the preliminary injunction standard."  *See id.* (quoting *Arriva Med. LLC v. U.S. Dep't of Health and Human Servs.*, 239 F. Supp. 3d 266, 283 (D.D.C. 2017)).  In this case, however, the Court finds that the potential harm to CPV is relevant to the irreparable harm analysis.  Here, the fate of CPV is closely tied to the fate of Millennium; a delay that pushes CPV into bankruptcy could imperil the entire project and thus impact Millennium.  Additionally, the Second Circuit has held that "loss of reputation, good will, and business opportunities" can constitute irreparable harm.  *Register.com, Inc.v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).  CPV has invested nearly $900 million in the Valley Energy Center, *see* Dkt. 18-22 at ¶ 17; if Millennium's failure to build a 7.8-mile pipeline on schedule undermines the entire operation, Millennium is sure to suffer a loss of reputation, good will, and business opportunities.  Therefore, the Court finds that Millennium has met its burden of establishing that it will suffer irreparable harm absent a preliminary injunction.

### 2. Likelihood of Success on the Merits[3]

---

[3] Because the Court is applying a heightened standard to Millennium's motion for a preliminary injunction, Millennium must show a "'clear' or 'substantial' likelihood of success on the merits."  *N.Y. ex rel. Schneiderman*, 787 F.3d at 650.

"The Supremacy Clause of the United States Constitution 'invalidates state laws that interfere with, or are contrary to federal law.'" *Boniaa v. Semple*, No. 15-CV-1614, 2016 WL 4582038, *5 (D. Conn. Sept. 1, 2016) (quoting U.S. Const. art VI, cl. 2). In general, there are three different types of preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (quoting *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)). Field preemption occurs when, "in the absence of explicit statutory language . . . Congress intended the Federal Government to occupy [a field] exclusively." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). "Such an intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *See id.* (alteration in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

"The NGA long has been recognized as a 'comprehensive scheme of federal regulation of 'all wholesales of natural gas in interstate commerce.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (quoting *N. Natural Gas Co. v. State Corp. Comm'n of Kansas*, 372 U.S. 84, 91 (1963)). "The NGA confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale." *See id.* at 300-01; *see also Island E. Pipeline*, 482 F.3d at 90 ("Congress wholly preempted and completely federalized the area of natural gas regulation by enacting [the NGA]").

Millennium argues that the freshwater wetlands and stream disturbance permits at issue in this case are subject to field preemption. *See* Dkt. No. 18-1 at 13. The Second Circuit has made

clear that state environmental regulations of FERC-approved projects are preempted by the NGA. *See National Fuel Gas Supply Corp. v. Public Service Commission of the State of N.Y.*, 894 F.2d 571 (2d Cir. 1990) ("Because FERC has authority to consider environmental issues, states may not engage in concurrent site-specific environmental review").  That is the essence of Millennium's argument in this case: New York state permitting requirements for a FERC-approved project are preempted by the NGA.  Moreover, Defendants do not seriously contest Millennium's likelihood of success on the merits, dedicating just one short paragraph of their memorandum of law to the issue.  *See* Dkt. No. 24-1 at 2.  Therefore, Millennium has demonstrated a strong likelihood of success on the merits.

### 3. Balance of the Hardships and Public Interest

Before issuing a preliminary injunction, "a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger*, 607 F.3d at 80.  Additionally, "the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  In this case, the public interest would not be disserved by a preliminary injunction, and the balance of hardships tips in Millennium's favor.

As discussed above, Millennium has established that both Millennium and CPV face significant harm if construction does not proceed immediately.  CPV could lose over $70 million and go into default if the Pipeline Project is substantially delayed, and Millennium stands to suffer both financial harm and significant reputational harm if the Pipeline Project is not completed on schedule and CPV goes into default.  Defendants, on the other hand, have a lesser interest in preventing construction.  First, a state is "in no way harmed by issuance of a

preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). Second, Defendants argue that construction will cause significant environmental harm—including seventeen water bodies, twenty-five wetlands, and various trees and shrubs—and that permanent environmental damage outweighs temporary economic damage. *See* Dkt. No. 24-1 at 23 (citing *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 767 (9th Cir. 2014)). But the proposed pipeline is just 7.8 miles long and Defendants have not shown that it would cause sufficient environmental damage to outweigh the harm that would be caused by a delay in construction. Additionally, FERC has outline specific environmental conditions that Millennium must comply with in order to begin construction on the Pipeline Project, and FERC has found that the project "would not constitute a major federal action significantly affecting the quality of the human environment" if Millennium abides by those conditions. *See* Dkt. No. 18-7 at 53-58.

Finally, the public interest would not be disserved by granting an injunction. If construction of the Pipeline Project is delayed until November 2018, the operation of the Valley Energy Center will also be delayed, which will come at a significant cost to the public. By displacing the older sources of power generation that are currently available, the Valley Energy Center is projected to save ratepayers an estimated $730 million per year and decrease $CO_2$ emissions in the region by approximately a half-million tons per year. *See* Dkt. No. 18-22 at ¶¶ 24-25.[4] In addition to their environmental concerns, Defendants argue that it would not serve the public interest to allow Millennium to proceed with construction before Defendants' arguments

---

[4] The Court notes that the projected $730 million annual savings asserted in the motion for a preliminary injunction appears to be different from the approximately $400 million in annual savings alleged in the complaint. *Compare* Dkt. No. 1 at ¶ 28, *with* Dkt. No. 18-22 at ¶ 24.

regarding Section 401 certification are heard before a court. *See* Dkt. No. 24-1 at 22. But all of

the contested issues relating to the Section 401 certification are before the Second Circuit, not this

Court. The Second Circuit has already considered the question whether construction should be

allowed to proceed while issues relating to the Section 401 certification are being litigated, and

the Second Circuit denied NYSDEC's motion for an emergency stay of construction.

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 24) is **DENIED**; and the Court

further

**ORDERS** that Plaintiff's motion for a preliminary injunction (Dkt. No. 18) is **GRANTED**

as set forth herein, and Defendants are preliminarily enjoined from enforcing the stream

disturbance permit and the freshwater wetlands permit against Millennium in order to prevent

Millennium from beginning construction on the Pipeline Project; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


Dated: December 13, 2017
     Albany, New York

Mae A. D'Agostino
U.S. District Judge